UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SÜD-CHEMIE, INC.           PLAINTIFF

v.           CIVIL ACTION NO. 3:03CV-29-S

MULTISORB TECHNOLOGIES, INC.           DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on cross-motions of the parties, Süd-Chemie, Inc. and Multisorb Technologies, Inc. on the question of the validity of U.S. Patent No. 5,793,942 (the "942 patent") to Shelley and Rix.[1]

The abstract of the '942 patent describes the invention:

> Formed is a new dessicant film made of an uncoated microporous film secured to an uncoated laminate film wherein the inner surface of both the microporous film and the laminate material are compatible. This film is less expensive to form and produces a stronger bond than conventional coated materials used for dessicant packaging.

This "dessicant film" of Claim 1 is

> ...a laminated, water vapor permeable dessicant packaging material, wherein said packaging material comprises an uncoated microporous film having an inner and outer surface heat sealed to an uncoated laminate film having an inner and outer surface, wherein the uncoated microporous film comprises a different composition from the uncoated laminate film, wherein edges of the inner surface of the uncoated microporous film are sealed to edges of the inner surface of the uncoated laminate film, and wherein the inner surface of the uncoated microporous film and the inner surface of the uncoated laminate film are comprised of compatible polymeric materials.

The packaging material surrounds a dessicant material which combined forms the dessicant container for which the '942 patent issued. This dessicant container is sold as the Container Dri II

---

[1] There are additional motions which are rendered moot by this ruling.

dessicant pack[2] by Süd-Chemie for use, in part, in ocean-going cargo containers to absorb water vapor and prevent "container rain."

The court conducted a *Markman* hearing and issued an opinion in which the terms of the patent were defined, pursuant to the directive of *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed.Cir. 2005) and *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 986 (Fed.Cir. 1995)(*en banc*), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384 (1996). The court set out these definitions:

1. "Uncoated" in the context of the '942 patent means uncoated with an adhesive.

2. "Microporous film" has its common and ordinary meaning; that is, a single sheet structure, which may or may not be laminated, having a plurality of fine openings, and may be prepared by any conventional film forming process.

3. "Laminated" or "laminate" has its common and ordinary meaning; that is, two-or more bonded layers.

4. "Water vapor permeable" has its common and ordinary meaning; that is, allowing water vapor to pass through.

5. "Surrounded by" has its common and ordinary meaning; that is, encircled on all sides or confined on all sides.

October 19, 2006 Memorandum Opinion and Order (DN 242).

After the parties filed motions addressing Multisorb's challenge to the validity of the '942 patent, the United States Supreme Court issued its opinion in *KSR International Co. v. Teleflex, Inc.*, 127 S.Ct. 1727 (2007) altering the landscape of validity analysis. The parties were given the opportunity to supplement their briefs to address the impact of the *KSR* case on the question of validity. The court has considered the '942 patent in light of the prior art and concludes that a person of ordinary skill in the art would have had reason to try the combination of the oxygen absorbent packaging taught in the Komatsu patent, U.S. Patent No. 4,487,791 and a dessicant material. Such an option was in the technical grasp of one skilled in the art, and, in light of

---

[2]We note this use only for purposes of background. This particular employment of the '942 patent technology was offered to the court for illustrative purposes at the *Markman* hearing. The focus of the court in this legal analysis is not on the marketed products, however, but on what the patent claims.

Komatsu, the combination did not yield a surprising and unexpected result. The court rejects the contention of Süd-Chemie that Komatsu teaches away from this combination of elements. We note the proposition that a patent composed of several elements is not proved obvious merely by demonstrating that each if its elements was, independently, known in the prior art. *KSR, supra.* at 1741. Further, we note that it is important to identify a reason that would have prompted one of ordinary skill in the relevant field to combine the elements in the way the claimed new invention did. *Id.* The Supreme Court stated that

> [i]n determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls. What matters is the objective reach of the claim...When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance the fact that a combination was obvious to try might show that it was obvious under § 103.

*KSR*, 127 S.Ct. at 1742. For the reasons articulated below, we conclude that the '942 patent was obvious in light of the prior art patent to Komatsu.

Süd-Chemie admits that the Komatsu patent and the Oxygen Getter[3] may be considered as prior art in light of the Supreme Court's statement that the pertinent prior art need not be restricted to references which addressed precisely the same problem as the patent in issue.

Süd-Chemie urges that the '942 patent is not a "combination patent" because key elements are not found in the prior art. In particular, it urges that the Komatsu patent does not claim microporous and laminate films which are uncoated with adhesive, nor does it claim that its films are of compatible polymeric materials. Süd-Chemie further urges that those elements yielded surprising and unexpected results in the dessicant container of the '942 patent.

---

[3]Oxygen Getter was a product sold in the 1980s by Multiform Dessicants, Inc., a predecessor of Multisorb Technologies, Inc. There is little in the record to substantiate the elements of which this device was comprised. Rather, multisorb has submitted a claim chart which purports to compare the elements of the '942 patent to the Oxygen Getter. In light of the sparseness of information concerning the Oxygen Getter, we will focus our attention on the Komatsu patent.

> Section 103 forbids issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." In *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Court set out a framework for applying the statutory language of § 103, language itself based on the logic of the earlier decision in *Hotchkiss v. Greenwood*, 11 How. 248, 13 L.Ed. 683 (1851), and its progeny. See 383 U.S., at 15-17, 86 S.Ct. 684. The analysis is objective:
>
> "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." *Id.,* at 17-18, 86 S.Ct. 884.
>
> While the sequence of these questions might be reordered in any particular case, the factors continue to define the inquiry that controls. If a court, or patent examiner, conducts this analysis and concludes the claimed subject matter was obvious, the claim is invalid under § 103.

*KSR*, 127 S.Ct. at 1734.

The parties agree that a person of ordinary skill in the art ("POSITA") would possess a four-year technical degree in chemical, mechanical, or packaging engineering plus five years' experience including focused experience. *See, ie.* Süd-Chemie Cross-Motion for Summary Judgment, DN 253, p. 5. In its supplemental brief, Süd-Chemie states that it agrees with the "<u>level</u> of skill in the art, but <u>not</u> the 'modified atmospheric packaging' art area proposed by Multisorb." DN 279, p. 10. Süd-Chemie asserts that "Multisorb made up this art specially for this case as a contrived platform to fabricate 'motivation' to apply Komatsu '791 or Oxygen Getter oxygen absorbers to the dessicant package of the '942 Patent." *Id.* At the same time, however, Süd-Chemie notes that "[t]he technology of an oxygen absorber product is indisputably different from the technology of a deliquescent dessicant product..." DN 253, p. 10, and urges that "[a] POSITA appreciates that this increased weight [of liquid water purportedly from a "phase change" from water vapor to liquid water] puts pressure on the inside edge bonds of the package, necessitating strong bonds in a

dessicant package. Komatsu '791 **teaches away** from the requirement of strong bonds..." DN 281, p. 3 (emphasis in original). Süd-Chemie thus seeks to have it both ways. For purposes of assessing a POSITA's motivation to consider oxygen absorber technology in formulating a solution to a dessicant packaging problem, it suggests that a POSITA with general packaging art experience would suffice. However, Süd-Chemie seeks to establish "teaching away" through the eyes of a POSITA who has knowledge of the science behind dessicants and oxygen absorbents, what may be described as atmosphere-modifying materials. Specifically, Süd-Chemie states that a POSITA would understand the changing conditions inside dessicant and oxygen absorbent containers. The suggested distinction between the science of dessicants versus oxygen absorbers does not necessarily fall within the sphere of knowledge of a general packaging art expert. Süd-Chemie has made the case for more particularized expertise of one in the modified atmospheric packaging industry.

Further, *KSR* instructs that obviousness is to be determined with reference to "a person having ordinary skill in the art *to which the subject matter pertains*." *KSR*, 127 S.Ct. at 1734 (emphasis added). The art to which the subject matter pertains in this case is the modified atmospheric packaging art, as the '942 patent, the Komatsu patent, and the Oxygen Getter all relate to the design of products for maintaining and/or modifying a given atmospheric condition. The '942 patent, Komatsu patent, and Oxygen Getter are all admittedly containers which claim either a dessicant or oxygen absorbent as an element of the device. Thus the world of packaging for our purposes is specialized, focused particularly on the modified atmospheric packaging art, as suggested by Multisorb.

The Komatsu patent teaches a container comprising a plastic microporous film or nonwoven fabric sheet and a laminated sheet with an oxygen absorbent disposed between the layers and heat sealed around the edges. Süd-Chemie does not dispute that the Komatsu patent employs these elements. Rather, it urges that because the Komatsu patent does not specifically state that the films

- 5 -

are uncoated with an adhesive or that their inner surfaces are comprised of compatible polymeric materials, the court cannot find that these elements are the same as those claimed in the '942 patent. However, the preferred embodiments of the '942 and Komatsu patents include identical microporous films and laminated sheets. That the materials described are identical evidences that these elements did exist in Komatsu, but were not described in the terms of the '942 patent.[4] For example, both patents identify Celgard and Tyvek as suitable commercially available films. The laminate films of both patents may be formed of conventional polyolefinic materials such as for example polyethylene and polypropylene. As Komatsu does not limit the films by the presence or absence of a coating of adhesive, uncoated films are necessarily included. We find the same with respect to the element of "compatible polymeric materials." The Komatsu patent does not identify the inner surfaces of the films as comprised of compatible polymeric materials, but that does not meant that they are not. The Komatsu patent suggests the employment of the same materials claimed by the '942 patent to be "compatible polymeric materials." Thus compatible polymeric materials were within the purview of Komatsu.

The patents teach the heat sealing of the edges of the container, noting that the inner surfaces have a lower softening point than that of the outer layers, thus making heat sealing possible utilizing conventional high speed packaging equipment. This was, in fact, a problem which both patents sought to and did solve.

We conclude that the Komatsu patent taught the same container as the '942 patent, with the exception of the absorbent material disposed between the layers. The '942 patent identified what

---

[4] We note herein that we are not limited in our analysis of the Komatsu patent to the claims of the patent. While the claims define the metes and bounds of an invention, the background of the invention and the preferred embodiment shed light on elements inherent in the claimed device but not necessarily claimed. In this instance, for purposes of assessing the scope and content of the prior art, the suggested use of identical films in the '942 and Komatsu patents evidences that Komatsu encompassed what the '942 patent claimed. In other words, uncoated films were not excluded from the microporous and laminate films claimed, and in fact *the same* films preferred in the '942 patent were also preferred in Komatsu. Süd-Chemie does not contend that the films are not identical. Rather, it urges that the characteristics of "uncoated" and "compatible polymeric material" are essential to the success claimed by the '942 device. As the films are identical, these characteristics in fact existed in the prior art invention of Komatsu.

it urged as a surprising and unexpected result from heat sealing uncoated films. It identified certain films as compatible and which bond strongly when heat sealed. However, the device of the '942 patent did not, in the words of the Supreme Court, "create some new synergy." *Anderson's -Black Rock, Inc. v. Pavement Salvage Co.*, 396 U.S. 57, 60-62, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969). Indeed, the '942 patent did not employ elements that worked together in an "unexpected and fruitful manner." *United States v. Adams*, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

Süd-Chemie urges the court to "guard against slipping into the use of hindsight"in reading into the prior art the teaching of the invention in issue. *Graham*, 383 U.S. at 36, *quoting, Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co.*, 332 F.2d 406, 412 (6th Cir. 1964). However, the mandate of the court in *KSR* is to utilize common sense in this inquiry. The '942 patent employs no elements that were not included in the elements of the Komatsu patent. The container of the '942 patent is the Komatsu container with dessicant in place of oxygen absorbent material. What Süd-Chemie identifies as invention we view as observation claimed as discovery. We have found the elements employed by the '942 patent in Komatsu. It appears that the seals in a container formed of uncoated materials with compatible inner surfaces are strong and may be formed at high speed on conventional packaging equipment. However, *KSR* noted that in determining obviousness, neither the particular motivation of the patentee nor his avowed purpose controls. What matters is the objective reach of the claim. If the claim extends to what is obvious, it is invalid under § 103. *KSR*, 127 S.Ct. at 1742-43.

*KSR* instructs that we may look to inventions in the art that solve problems other than those addressed by the patent in issue. Thus the fact that certain characteristics of the films preferred in Komatsu were not singled out does not render the claims articulated in the '942 patent patentable discoveries.

Süd-Chemie urges that Komatsu teaches away from the substitution of a deliqescent dessicant for an oxygen absorbent because there is increased pressure inside of the dessicant

container due to the phase change of water vapor to water and a corresponding increase in weight. Therefore, a dessicant container's need for strong bonds to accommodate this increased pressure was not a concern of Komatsu which dealt with oxygen absorbents. Süd-Chemie thus concludes that Komatsu teaches away from the claims of the '942 patent. In support of this proposition, the sole evidence offered by Süd-Chemie is a three-page excerpt of Powers' deposition, filed under seal. These pages do not contain any discussion of phase change, weight, or pressure within a dessicant container. Thus this argument appears to be wholly unsupported in the record.

Finally, Süd-Chemie argues that Multisorb has provided no reason that a POSITA would consider substituting a dessicant material for an oxygen absorbent material in a prior art device. First, we again note that the '942 patent cites a number of oxygen absorber patents as prior art references. Additionally, Komatsu addressed the need also expressed in the '942 patent for a container which could be produced on conventional high speed packaging machines. The '942 patent also addressed this problem. Thus there would be motivation to substitute a dessicant for the oxygen absorbent material in a container which had solved this manufacturing problem. *KSR* stated that "[u]nder the correct analysis, any need or problem known in the field of endeavor at the time of the invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *KSR*, 127 S.Ct. at 1743.

Under the newly articulated "expansive and flexible" approach to the validity analysis, we conclude that the invention of the '942 patent would have been obvious to a person of ordinary skill in the art in light of the Komatsu patent. Therefore, the '942 patent is invalid and this action must be dismissed. A separate order will be entered this date in accordance with this opinion.